STATE, *ex rel.* SUWANEE RIVER BRIDGE Co. v. DAVID SHOLTZ, J. M. LEE, and W. V. KNOTT, as and constituting the Board of Administration of the State of Florida, *et al.*

158 So. 812.

Opinion Filed February 5, 1935.

*Giles J. Patterson,* for Relator.

*Cary D. Landis,* Attorney General, *Robert J. Pleus,* Astant, *McCollum & Howell, Hull, Landis & Whitehair,* and *D. C. Hull,* for Respondents.

*T. M. Shackleford, Jr.,* as *Amicus.*

DAVIS, J.—In earlier proceedings in this case an amended alternative writ of mandamus was held good. See State, *ex rel.* Suwannee River Bridge Co., v. Sholtz, 114 Fla. 135, 154 Sou. Rep. 871. The case is now before us again on

demurrer to the joint and several return of the respondents and on a motion to strike certain portions of the return.

The motion to strike paragraphs 2, 3, 4, 11, 12, 13, 14 and 15 of the return of the State Board of Administration and the motion to strike paragraphs 1, 2, 3, 7, 8 and 9 of the return of the Board of County Commissioners of Sumter County should be granted on the authority of State, *ex rel*. Rempsen v. Smith, 105 Fla. 368, 141 Sou. Rep. 318, wherein it was held all facts sufficiently alleged in an alternative writ of mandamus not specifically denied, are admitted to be true, and that a return containing mere averments of lack of knowledge of the truth of the averments of an alternative writ presents no material issue and may be disregarded. See also: Rountree v. State, *ex rel*. Georgia Bond & Mortgage Co., 102 Fla. 246, 135 Sou. Rep. 888.

From the amended alternative writ it is made to appear that the relator, as the holder of 33 matured Sumter County Highway bonds and 281 interest coupons of said bonds, seeks peremptory relief in the form of a mandatory writ for the payment to it of the sum of $39,840.00, to cover the principal and interest of its obligations, out of any moneys in the hands of the State Board of Administration derived from *ad valorem* tax proceeds collected by Sumter County for highway bond purposes and remitted to the State Board of Administration pursuant to Chapter 14486, Acts of 1929, to be disbursed for debt service requirements of Sumter County as provided by that Act.

That the relator's bonds and coupons are long in default is not denied by the respondents. And that the State Board of Administration failed to take any action whatsoever toward providing for payment of relator's demands other than to accumulate and hold in its possession all *ad valorem* tax remittances received by it, as well as gasoline taxes

credited to the account of Sumter County, in a common fund from September 9, 1932, until February 17, 1933, when it sent a check to Hanover Bank & Trust Company of New York to pay coupons maturing July 1, 1932, is likewise admitted to be true.

We therefore have a situation presented by the record wherein it is made to appear that there is in the hands of the State Board of Administration a disbursable fund which consists in large part of certain *ad valorem* tax moneys specifically levied and raised to pay the bonds of which relator's demands are a part, which *ad valorem* tax moneys if now segregated by the State Board of Administration from other funds in its hands not subject to being reached by a writ of mandamus brought under the "first come, first served" rule by a bondholder, may nevertheless be ample and sufficient to pay what is relator's due and to discharge relator's bonds and coupons in full by applying to them only those moneys derived from *ad valorem* tax proceeds directly levied and collected to pay the issue of bonds and coupons of which relator's bonds and coupons are a part.

*Ad valorem* tax funds remitted by counties and districts to the State Board of Administration to be applied to the purposes of Chapter 14486, Acts 1929, are remitted to the State Board of Administration to be disbursed in accordance with the statute "in payment of bonds and coupons," for which such funds were collected and remitted. When the State Board of Administration receives any such *ad valorem* tax funds it receives them charged with the trust of distributing them in accordance with Chapter 14486, *supra,* in payment of "bonds and coupons."

When all receipts by the State Board of Administration have been commingled and treated as a common fund to be used by the Board in payment of principal and interest as

the same becomes due and as the law provides, and it appears that there is in such common fund sufficient money to pay past due interest coupons and matured installments of principal of highway bonds, a bondholder whose bonds and coupons are in default is entitled to look to the entire fund for payment, from whatever source the same has been derived, since the commingled fund represents an appropriation by the State Board of Administration for the payment of his debt, and a writ of mandamus brought against the State Board of Administration seeking to have such common fund disbursed by being applied to the satisfaction of relator's defaulted bonds and coupons to the extent the fund will discharge the bonds and coupons sued on, must be sustained.

The State Board of Administration has authority to keep separate in its accounts those moneys which have been raised by direct taxation to pay interest and principal of bonds subject to its final management, but when it fails to do so and commingles all moneys in a common disbursable fund to be used in payment of the principal and interest of bonds, the fund so established is in all respects to be treated as a fund appropriated to the payment of the bonds and interest coupons for which it is capable of being disbursed, and any holder of a defaulted bond or coupon has the legal right to seek relief against such fund to the extent of his defaulted and unsatisfied claims payable out of such fund.

Furthermore, the effect of Section 16 of Chapter 14486, Acts of 1929, is to require the levy of a single new statutory tax for principal and interest of county and district highway bonds equal to the difference between the amount of debt service requirements and the amount available to the county or district out of separate sources that are to be

used to reduce the amount of tax levy. By the levy of such tax all the proceeds derived from its collection is by operation of law forthwith appropriated to the payment of the maturing principal, interest and sinking fund requirements for which the same was levied. The character of the tax moneys is not lost by commingling same with other amounts available to the county as supplementary revenues. Rather the supplementary revenues become impressed by such commingling with the characteristics of a tax fund and as such are thereafter amenable to the same processes of law as are available for use to reach and apply the tax fund to the satisfaction of individual coupons and bonds.

It follows from what has been said that the demurrer to the respondents' return must be sustained and such will be the order of the Court.

Motions to strike certain parts of return granted.

Demurrer to return sustained.

Ellis, Terrell, Brown, and Buford, J. J., concur.